16592

STATE v. WILLIAMS
(69 S. E. (2d) 371)

108

*Messrs. Herbert & Dial,* of Columbia, *for Appellant,* cite:

*Messrs. T. Pou Taylor, Solicitor,* of Columbia, *and J. Means McFadden,* of Chester, *for Respondent,* cite:

February 12, 1952.

STUKES, Justice.

Appellant, a Negro bank employee and former football coach at Benedict College, Columbia, was convicted at the January term, 1951, of the Court of General Sessions for Richland County of conspiracy to defraud the State by the sale of answer keys for the State teachers' examinations which were held in 1948 and 1949. It was a statewide "racket" of distressingly large proportions, which will be seen by reference to *Pettiford v. State Board of Education,* 218 S. C. 322, 62 S. E. (2d) 780, *certiorari* denied 341 U. S. 920, 71 S. Ct. 742, 95 L. Ed. 1354, and *State v. Hightower,* S. C., 69 S. E. (2d) 363. The latter was the affirmance of conviction of that appellant in the Court of General Sessions of Edgefield County similar to that of the instant appellant in Richland County. *Pettiford's case* was a review by *certiorari* of the revocation of her teacher's certificate on account of the unlawful use by her of one of the fraudulent keys, which was affirmed. It appears that the State has followed the policy of prosecution in the criminal courts of only those who engaged in criminal conspiracy and sale

or distribution of the keys; and with respect to the purchasers and users thereof, their certificates or licenses to teach have been revoked without criminal prosecution. The constitutionality of the revocation statute and process was upheld in an action in the United States Court. *Shirer v. Anderson,* D. C., 88 F. Supp. 858.

The indictment upon which appellant was tried charged him, the dean of Allen University, also located in Columbia, and another with conspiracy. The defendant last referred to pleaded guilty while appellant and the dean went to trial upon their pleas of not guilty, although the dean had made self-inculpatory statements prior to trial. Appellant did not testify. Upon conviction, the trial judge, at the request of their counsel, postponed the imposition of sentences for two days during which counsel attempted to negotiate with the State's attorneys for recommendation of leniency in sentence in return for full disclosure by the defendants. The Solicitor and associate counsel for the prosecution declined to negotiate or make any recommendation to the court. After this delay, the trial judge sentenced the dean to three years' imprisonment but on account of his advanced age and physical infirmity, and because of his prior confession, service of the sentence was suspended upon probation and payment of the sum of $2,500.00. Appellant, however, declined to make any statement concerning the crime of which he stood convicted and was sentenced to five years' imprisonment. In the judgment under review it was pointed out that under the probation and parole law he will be eligible for parole, upon conditions specified in the statute, after service of one-third of the sentence. Act No. 199 of May 26, 1949, 46 Stat. at Large, p. 311. The term of Court at which appellant was convicted and sentenced was adjourned *sine die* on January 20, 1951.

Appellant appealed from his conviction and sentence and was freed on bond, but that appeal has not been pressed to hearing. Meanwhile, on April 11, 1951, appellant, by other than his trial counsel, filed a motion for new trial for the

avowed purpose of entering a plea of guilty in the hope of securing a lighter sentence. Appended to the motion were affidavits by appellant in which he confessed to the receipt and sale by him in 1948 and 1949 of limited numbers of the fraudulent keys, the proceeds of which he divided equally with another. He gave as reason for his criminal conduct the belief that there would be discrimination against members of his race in the examinations; and his subsequent conceal-ment and denial were attributed by him to fear of social ostracism and of physical violence, if he incriminated others.

The motion for new trial was refused upon the ground of lack of jurisdiction by reason of the previous adjournment of the term of the court at which appellant had been con-victed and sentenced. This appeal followed and relates to the single question of jurisdiction.

There was no error in the order under appeal. It is very generally held that motion for new trial after adjournment of the term come too late. 24 C. J. S. 121, Criminal Law § 1590. 15 Am. Jur. 129, Criminal Law, sec. 473. This court is committed to that view. In *State v. Weldon,* 91 S. C. 29, 74 S. E. 43, 39 L. R. A., N. S., 667, Ann. Cas. 1913E, 801, which was a case of capital punish-ment for murder, motion for new trial made after term time was granted without reference to jurisdiction which was apparently not questioned. In *State v. Thompson,* 122 S. C. 407, 115 S. E. 326, 334, another capital case, the closely divided *en banc* court followed *Weldon's case* after full con-sideration of the jurisdictional question but did so upon the grounds of *in favorem vitae* and the unique circumstance that counsel for appellant had relied for his procedure (and abandoned appeal) upon the precedent of *Weldon's case.* However, the court plainly declared that the precedent would not be followed thereafter, and said: "For the reasons above stated the decision in *State v. Weldon,* 91 S. C. 29, 35-41, 74 S. E. 43, 39 L. R. A., N. S., 667, Ann. Cas. 1913E, 801, is overruled, in so far as it authorizes a motion for a new trial to be made at a subsequent term of court, on the ground

of facts occurring at the trial, or circumstances immediately connected therewith, which were known to the party moving, or his counsel, during the trial, and in the future all such motions must be presented to the trial judge before the expiration of the term at which the trial is had."

As above indicated, the *en banc* court all but equally divided and the strong minority were of the opinion that the *Weldon case* should not be followed even in that capital case, despite counsel's reliance in good faith upon it. There can now be no doubt of the rule and the duty of the court to adhere to it in this case, which we do. The statement of it quoted above from *State v. Thompson, supra*, excludes from its operation motions for new trial made upon the ground of after-discovered evidence. The following authorities relate to the latter: *State v. Williams*, 108 S C. 295, 93 S. E. 1006; *State v. Hawkins*, 121 S. C. 290, 114 S. E. 538, 27 L. R. A. 1083; Annotations, 27 A. L. R. 1091, 139 A. L. R. 340; and Supreme Court Rule 24.

A parallel rule is enforced in the civil courts of common pleas. *King v. W. U. Tel. Co.*, 167 S. C. 500, 166 S. E. 629 (both opinions), with the qualification that if the motion be made during the term at which the trial was had, it may be marked "Heard" on the docket by the presiding judge and be actually heard and determined by him after adjournment of the term if the court and counsel for all parties concerned so consent or acquiesce at the time the motion is made; but motion before adjournment of the term at which the case was tried is essential to the subsequent jurisdiction of the court. Jurisdiction as here used has reference to the subject matter which waiver or consent cannot confer. *State v. Castleman*, 219 S. C. 136, 64 S. E. (2d) 250; *U S. v. Mayer*, 235 U. S. 55, 35 S. Ct. 16, 59 L. Ed. 129. To the same effect as the *King case* are: *Rhodes v. Southern Ry Co.*, 139 S. C. 139, 137 S. E. 434, *Eagerton v. Atlantic C. L. R. Co.*, 175 S. C. 209, 178 S. E. 844, and *Burns v. Babb*, 190 S. C. 508, 3 S. E. (2d) 247.

The practical necessity of this requirement of timely motions during term time is quite apparent. Otherwise there would hardly be any end of motions for new trial. It is requisite to the orderly administration of justice. *Interest reipublicae ut sit finis litium.*

The exceptions are overruled and the order refusing new trial is affirmed.

FISHBURNE, TAYLOR and OXNER, JJ., and G BADGER BAKER, Acting Associate Justice, concur.